Filed 5/7/25  Hawkins v. Howard CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| MARLON HAWKINS, | |
| Plaintiff and Appellant, | G064469 |
| v. | (Super. Ct. No. CIVSB2304394) |
| NEAL H. HOWARD et al., | O P I N I O N |
| Defendants and Respondents. | |

Appeal from a judgment of the Superior Court of San Bernardino County, Winston S. Keh, Judge. Affirmed.

Burk Injury Lawyers, Christopher D. Burk and A. J. Sharp for Plaintiff and Appellant.

Wilson, Elser, Moskowitz, Edelman & Dicker and Kelly A. Van Nort for Defendants and Respondents.

\*        \*        \*

Plaintiff Marlon Hawkins appeals after his lawsuit against Neal H. Howard and Neal H. Howard & Associates (defendants or Howard) was dismissed. The trial court sustained a demurrer to Hawkins's first amended complaint (the complaint) for legal malpractice, finding it was barred by the statute of limitations. Hawkins argues this was error, contending the court should have found the delayed discovery rule applies. We conclude allegations in the complaint do not support Hawkins's claim of delayed discovery as a matter of law. Accordingly, we affirm the judgment.

STATEMENT OF FACTS AND PROCEDURAL HISTORY

In September 2018, Hawkins retained Howard to represent him in a civil case against the City of San Bernardino and individual police officers for injuries Hawkins suffered during an officer-involved shooting on April 5, 2018. On September 7, Howard, who was based in Georgia, mailed a tort claims notice to the San Bernardino City Attorney and counsel for the City of Barstow.

After Howard sent the tort claims notice, he referred the case to the law firm of Ivie McNeill Wyatt Purcell & Diggs, APLC (Ivie McNeill). Thereafter, the complaint alleged, Howard took no further action.

In 2020, Ivie McNeill filed a lawsuit on Hawkins's behalf in the United States District Court against the City of Barstow and several individual police officers. (*Marlon Hawkins v. The City of Barstow, CA*, et al., Case No. 5:20-CV-00557-MWF-SP (the federal case).) Hawkins filed a first amended complaint in the federal case in July 2020, alleging three federal claims and eight claims under California law.

The City of Barstow and the individual police officers named in the federal case filed a motion to dismiss, arguing, as pertinent here, that Hawkins had failed to comply with the claim presentation requirement set

2

forth in Government Code section 900, which required him to present his state law claims no later than six months after the accrual of the cause of action. The matter was fully briefed.

On September 15, 2020, the federal district court issued an order dismissing the state law claims with prejudice, on the basis that Hawkins "did not present his claim under California law because he did not submit it to a 'clerk, secretary, or auditor' of [the City of] Barstow." Sending letters to the city attorney and counsel was insufficient. The order referred to Howard's actions as an "error."

After the dismissal of the state law claims, the federal case continued with regard to the three federal claims. According to the complaint, Hawkins became aware the district court had dismissed the state law claims "in or shortly after September 2020."

In December, pursuant to joint stipulations, the federal case against both the City of Barstow and the individual police officers was dismissed. Hawkins refers to this in the complaint as a "settlement."

According to the complaint, beginning on or before April 1, 2021, Hawkins repeatedly requested, in writing, his case file from Ivie McNeill and Howard.

Hawkins's brief states that he retained his current counsel, Christopher D. Burk of Burk Injury Law (Burk), on or about July 2021 "to evaluate potential malpractice claims." Hawkins contends that Burk was unable to obtain his case file from defendants until February 2, 2022, when local counsel Ivie McNeill provided it.

The complaint alleged: "While the pleadings and other public documents filed in the underlying matter, available to HAWKINS as of September 15, 2020, and to his current counsel beginning in or around July

3

2021, had provided some potential basis for inferring that the loss of HAWKINS's state law claims in that matter had been caused at least in part by the professional negligence of the HOWARD ATTORNEYS, it was not until [Hawkins's] current counsel was able to review the entire case file in that matter (provided on February 2, 2022, by IVIE McNEILL) that [Hawkins] and/or his counsel could ascertain with reasonable certainty the professional negligence of the HOWARD ATTORNEYS, and each of them, was the sole cause of the loss of those claims, and that no mitigating or exculpatory facts existed that could excuse the egregious failure of the HOWARD ATTORNEYS, and/or each of them."

Burk, on Hawkins's behalf, filed the instant lawsuit for legal malpractice a year after receiving the case file, on February 2, 2022.

Accordingly, we can summarize the relevant dates as follows:

1) September 15, 2020: the state law claims in the federal case are dismissed.

2) September 2020 or shortly thereafter: Hawkins becomes aware of the dismissal of the state law claims.

3) July 2021: Hawkins retains Burk as new counsel.

4) September 16, 2021: One year after the state law claims are dismissed.

5) February 2, 2022: Ivie McNeill turns over case file.

6) February 2, 2023: The instant lawsuit is filed.

The court sustained a demurrer to Hawkins's initial complaint and granted leave to amend. Hawkins filed the first amended and operative complaint on August 1, 2023.

Defendants filed a demurrer to the amended complaint on statute of limitations grounds. Hawkins opposed, arguing the statute of limitations

4

was tolled until the date Ivie McNeill turned over the case file. He also argued defendants had tried to prevent him from learning the factual basis for the malpractice claim by both withholding the file and providing "blatantly false and intentionally misleading information" to current counsel in correspondence. (Capitalization & boldface omitted.) Defendants filed a reply, contending that Hawkins knew or at least had reason to suspect legal malpractice from September 15, 2020, the date the state law claims were dismissed from the federal case.

The trial court's order noted Hawkins's argument that he had pleaded facts showing that a reasonable investigation between September 15, 2020, and February 2, 2022, would not have revealed the factual basis for his legal malpractice claims. The court found this argument unpersuasive. Among other things, Hawkins had not pleaded any facts to show why Burk "could not have simply downloaded the District Court order of dismissal" from electronically available court files "between the time he began asking for [Hawkins's] client file in July 2021 and the time the one-year statute of limitations ran in September 2021."

The court noted the complaint's admission that public documents available to Hawkins and Burk "'provided some potential basis for inferring'" the existence of a legal malpractice claim. Hawkins "explains that same public document was an order clearly stating that [Hawkins's] state law claims were dismissed on the grounds that [Hawkins] failed to comply with the claim presentation requirement. . . . In other words, the documents which were available to [Hawkins], and of which [Hawkins] was aware, specifically set forth the basis for [Hawkins's] malpractice claim against Defendants— that they failed to comply with the claim presentation requirement."

5

Further, Hawkins's conclusory allegation that he and counsel could not have discovered a factual basis for his malpractice claim was "completely undercut by the facts alleged" in the complaint. The court refused to consider extrinsic and unpleaded facts not included in the complaint regarding communications between Burk and defendants, but stated that even if that evidence were considered, it would not change the outcome. Howard's alleged denials of malpractice demonstrated Burk was aware of a potential malpractice claim and had time to investigate. At that point, it was "inconceivable" that counsel would not[1] download a copy of the order of dismissal. Accordingly, the court found the delayed discovery rule did not apply, and given that Hawkins had already been granted leave to amend, sustained the demurrer without leave to amend. Judgment was subsequently entered. Hawkins now appeals.

DISCUSSION

I.

RELEVANT LAW AND STANDARD OF REVIEW

"In our de novo review of an order sustaining a demurrer, we assume the truth of all facts properly pleaded in the complaint or reasonably inferred from the pleading, but not mere contentions, deductions, or conclusions of law. [Citation.] We then determine if those facts are sufficient, as a matter of law, to state a cause of action under any legal theory." (*Intengan v. BAC Home Loans Servicing LP* (2013) 214 Cal.App.4th 1047, 1052.) "In order to prevail on appeal from an order sustaining a demurrer, the appellant must affirmatively demonstrate error. Specifically, the

---

[1] The order appears to be missing a word here, but the court's meaning is evident.

6

appellant must show that the facts pleaded are sufficient to establish every element of a cause of action and overcome all legal grounds on which the trial court sustained the demurrer." (*Ibid.*)

"A complaint disclosing on its face that the limitations period has expired in connection with one or more counts is subject to demurrer." (*Fuller v. First Franklin Financial Corp.* (2013) 216 Cal.App.4th 955, 962.) To sustain a demurrer on this ground, "the untimeliness of the lawsuit must clearly and affirmatively appear on the face of the complaint and matters judicially noticed." (*Coalition for Clean Air v. City of Visalia* (2012) 209 Cal.App.4th 408, 420.)

Hawkins expends a great deal of effort arguing the trial court applied the wrong standard in reaching the conclusion that the statute of limitations barred his claim and that delayed discovery does not apply.[2] He goes so far as to supply us with a flowchart explaining what he believes is the correct analysis. But Hawkins ignores the manner in which we review the trial court's ruling on appeal. It does not matter if the trial court analyzed under an incorrect standard if it reached the correct result. "We will affirm the ruling if there is any ground on which the demurrer could have been properly sustained." (*Intengan v. BAC Home Loans Servicing LP, supra,* 214 Cal.App.4th at p. 1052.) "An order sustaining a demurrer must be affirmed if it is correct on any ground asserted in the demurrer, independent of the trial court's stated reasons." (*Rossi v. Sequoia Union Elementary School* (2023) 94 Cal.App.5th 974, 985.) "We do not review the validity of the trial court's

---

[2] The two standards are not as different as Hawkins believes, and as we shall discuss below, under either standard, the result in this case is the same.

reasoning, only the propriety of the ruling itself." (*Gentry v. eBay, Inc.* (2002) 99 Cal.App.4th 816, 825.) Accordingly, the trial court's specific analysis of the issue is not relevant on appeal. We review the result, not the reasoning, independently.

## II.

### STATUTE OF LIMITATIONS FOR LEGAL MALPRACTICE

In relevant part, Code of Civil Procedure section 340.6[3] states: "(a) An action against an attorney for a wrongful act or omission . . . arising in the performance of professional services shall be commenced within one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission . . . ."

The parties agree that section 340.6, and the one-year statute of limitations set forth therein, is the relevant statute that applies to this complaint, which states a single cause of action for legal malpractice.

## III.

### DELAYED DISCOVERY

"Generally speaking, a cause of action accrues at 'the time when the cause of action is complete with all of its elements.' [Citations.] An important exception to the general rule of accrual is the 'discovery rule,' which postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." (*Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797, 806–807 (*Fox*).)

---

[3] All further undesignated statutory references are to the Code of Civil Procedure.

8

*Fox* was a medical malpractice case after the plaintiff underwent gastric bypass surgery and allegedly suffered severe complications. (*Fox, supra,* 35 Cal.4th at p. 802.) "In the course of discovery, Fox received information that a medical device used during the surgery may have malfunctioned, causing her injury. Fox then amended her complaint to add a products liability cause of action against the manufacturer of the device, Ethicon Endo–Surgery, Inc. (Ethicon). Ethicon filed a demurrer raising a statute of limitations defense, to which plaintiff responded by relying upon the delayed discovery rule . . . ." (*Id.* at pp. 802–803.) Fox alleged that she could not, after reasonable investigation, have discovered earlier that the malfunctioning device might have caused her injury. (*Id.* at p. 803.)

The court explained the discovery rule. "A plaintiff has reason to discover a cause of action when he or she 'has reason at least to suspect a factual basis for its elements.' [Citations.] Under the discovery rule, suspicion of one or more of the elements of a cause of action, coupled with knowledge of any remaining elements, will generally trigger the statute of limitations period." (*Fox, supra,* 35 Cal.4th at p. 807.) "The discovery rule only delays accrual until the plaintiff has, or should have, inquiry notice of the cause of action. The discovery rule does not encourage dilatory tactics because plaintiffs are charged with presumptive knowledge of an injury if they have ""information of circumstances to put [them] *on inquiry*"" or if they have ""*the opportunity to obtain knowledge* from sources open to [their] investigation.""" [Citations.] In other words, plaintiffs are required to conduct a reasonable investigation after becoming aware of an injury, and are charged with knowledge of the information that would have been revealed by such an investigation." (*Id.* at pp. 807–808, fn. omitted.)

9

"In order to rely on the discovery rule for delayed accrual of a cause of action, '[a] plaintiff whose complaint shows on its face that his claim would be barred without the benefit of the discovery rule must specifically plead facts to show (1) the time and manner of discovery *and* (2) the inability to have made earlier discovery despite reasonable diligence.' [Citation.] In assessing the sufficiency of the allegations of delayed discovery, the court places the burden on the plaintiff to 'show diligence'; 'conclusory allegations will not withstand demurrer.'" (*Fox, supra,* 35 Cal.4th at p. 808.)

"Simply put, in order to employ the discovery rule to delay accrual of a cause of action, a potential plaintiff who suspects that an injury has been wrongfully caused must conduct a reasonable investigation of all potential causes of that injury. If such an investigation would have disclosed a factual basis for a cause of action, the statute of limitations begins to run on that cause of action when the investigation would have brought such information to light. In order to adequately allege facts supporting a theory of delayed discovery, the plaintiff must plead that, despite diligent investigation of the circumstances of the injury, he or she could not have reasonably discovered facts supporting the cause of action within the applicable statute of limitations period." (*Fox, supra,* 35 Cal.4th at pp. 808–809.)

"We conclude that, under the delayed discovery rule, a cause of action accrues and the statute of limitations begins to run when the plaintiff has reason to suspect an injury and some wrongful cause, unless the plaintiff pleads and proves that a reasonable investigation at that time would not have revealed a factual basis for that particular cause of action. In that case, the statute of limitations for that cause of action will be tolled until such time as a reasonable investigation would have revealed its factual basis." (*Fox, supra,* 35 Cal.4th at p. 803.)

10

We take this analysis one step at a time. First, we look at the complaint to determine when plaintiff had "reason to suspect an injury and some wrongful cause." On September 15, 2020, the state law claims in the federal case were dismissed. Hawkins, as he admits in the complaint, became aware of the dismissal "'in or shortly after September 2020.'" This is an obvious point at which an injury might be suspected.

The next point is in July 2021, some two months before the one year statute of limitations ran, which is when Hawkins retained Burk. Hawkins alleged he had been requesting his file from Howard and Ivie McNeill "beginning on or before April 1, 2021" and there is no allegation in the complaint that Burk was unaware of the requests for the file. Moreover, and more importantly, any reasonable attorney, faced with former counsel who refused to provide a client's file, would have been on notice of a potential problem, particularly with a looming statute of limitations for legal malpractice, the very claim Burk had been retained to investigate. Burk was not required to wait for Howard or McNeill to hand over Hawkins's file. He had other options, including, as he concedes, obtaining the file from the court.

As the complaint admits: "[T]he pleadings and other public documents filed in the underlying matter, available to HAWKINS as of September 15, 2020, and to his current counsel beginning in or around July 2021, . . . provided some potential basis for inferring that the loss of HAWKINS's state law claims in that matter had been caused at least in part by the professional negligence of the HOWARD ATTORNEYS . . . ."

This admission that the documents counsel needed were both public and "provided some potential basis" for bringing a claim for legal malpractice puts a knife through the heart of any argument that counsel needed to review the client file in order to file the instant case. Here, as the

11

complaint admits, publicly available documents were enough, and they were ascertainable. The minute order in the federal case was specific and clear that Howard's "error" in mishandling the notice of claim had doomed Hawkins's state law claims.

The complaint alleged that only upon review of the full client file could "[Hawkins] and/or his counsel could ascertain with reasonable certainty the professional negligence of the HOWARD ATTORNEYS . . . was the sole cause of the loss of those claims." First, "reasonable certainty" is not the legal standard for discovery. It is "reason to suspect an injury and some wrongful cause." (*Fox, supra,* 35 Cal.4th at p. 803.)

Second, Hawkins's claim that the full client file was necessary is belied by the unmistakable language of the publicly available documents, specifically the minute order in the federal case. Any reasonable attorney reading the federal court's minute order would have immediately recognized there was "reason to suspect" legal malpractice. We do not find "reason to suspect" meaningfully different than the "'some potential basis'" Hawkins admits the publicly available documents provided. Legally, he was on notice of a potential claim by no later than July 2021, when he retained Burk.

*Fox* provides a caveat to the "reason to suspect" standard if the plaintiff "pleads and proves that a reasonable investigation at that time would not have revealed a factual basis for that particular cause of action." (*Fox, supra,* 35 Cal.4th at p. 803.) But no reasonable reading of the complaint demonstrates that this was adequately pleaded. The complaint alleged: "Until the delivery by IVIE McNEILL of its case file in the underlying matter and receipt by HAWKINS's current counsel of that case file on February 2, 2022, reasonable investigation by HAWKINS, later aided by his current counsel, did not, and in fact could not have, revealed a factual basis for

12

HAWKINS's professional negligence/legal malpractice cause of action against the HOWARD ATTORNEYS, and each of them."

This allegation is entirely conclusory and not supported by the facts, including the other facts alleged in the complaint. Hawkins's assertion that a "reasonable investigation" was carried out is belied by his admission that publicly available documents "'provided some potential basis'" for a legal malpractice claim. Any "reasonable investigation" in this context, especially in the face of former counsel's refusal to produce a file, would have included the review of publicly available documents.

"A plaintiff seeking to utilize the discovery rule must plead *facts* to show his or her inability to have discovered the necessary information earlier despite reasonable diligence." (*Fox, supra,* 35 Cal.4th at pp. 808, 815, italics added.) Despite Hawkins's assertions to the contrary, a plaintiff cannot rely on conclusory allegations bereft of the necessary facts and claim the discovery rule is a question of fact. The failure to plead all necessary facts leaves the complaint vulnerable to a demurrer and dismissal as a matter of law.[4] (*Fox, supra,* 35 Cal.4th at p. 808.; *Czajkowski v. Haskell & White, LLP* (2012) 208 Cal.App.4th 166, 174.)

We find that the delayed discovery rule does not apply in this case. There were sufficient facts to demonstrate a reason to suspect legal malpractice in publicly available documents, as Hawkins admits. Additionally, he failed to plead facts adequate to support his conclusory

---

[4] The case Hawkins cites in support of this assertion, *Jolly v. Eli Lilly & Co.* (1988) 44 Cal.3d 1103, does not state otherwise. "While resolution of the statute of limitations issue is normally a question of fact, where the uncontradicted facts . . . are susceptible of only one legitimate inference," the court can resolve the issue as a matter of law. (*Id.* at p. 1112.)

13

assertion that a reasonable investigation would not have revealed a factual basis for a legal malpractice claim.

DISPOSITION

The judgment is affirmed. Defendants are entitled to their costs on appeal.


MOORE, ACTING P. J.

WE CONCUR:


SANCHEZ, J.


SCOTT, J.


14